IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA     :     CASE NO.  1:CR-09-010-01

                v.                  :

DWAIN WILLIAMS             :


**MEMORANDUM AND ORDER**

I.       **Background**

By indictment filed January 14, 2009, Defendant Dwain Williams was charged, along with a co-defendant, Andrew Booker, with conspiracy to distribute and possess with the intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(iii), and 18 U.S.C. § 2; and with distribution and possession with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and 18 U.S.C. § 2.  The basis for the indictment was as follows.

On December 4, 2008, law enforcement, using an informant, conducted a controlled heroin purchase from Defendants Dwain Williams and Andrew Booker. Another arranged purchase took place on December 9, 2008.  At the arranged place where the drug transaction was to take place, Defendants were arrested. Subsequently, at the Pennsylvania State Police substation in York County, a confession was obtained from Williams.  The circumstances of the arrest and the interview of Williams is the subject of a motion to suppress.  A hearing on the motion was held on March 10, 2009.

## II.        Evidence

### A.        Government Evidence

Pennsylvania State Police Trooper Shawn Wolfe ("Trooper Wolfe") was admitted as a drug recognition expert.  Trooper Wolfe presented his training in this area.  His training was directed in the recognition of persons under the influence of various drugs: alcohol, cocaine, heroin, depressants, etc.

Trooper Wolfe was in another car about 100 yards from the arrest which took place bout 9:00 p.m. or shortly thereafter.  He interviewed Williams at the substation.  Prior to taking Williams' statement, Wolfe advised Williams of his Miranda rights and made an assessment that he was not under the influence.  The assessment was made by speaking to Williams, examining his demeanor, checking his eyes and facial expressions, his responses and cognitive reasoning.  Williams did not complain about being dizzy or high.

Williams agreed to give a statement in which he said he said that he was delivering heroin to another party in Pennsylvania; he drove from Maryland with 100 grams of heroin; he was to receive $10,000.00 for the same – $7,000.00 was to go to his supplier in Maryland and he was to receive $3,000.00.  Trooper Wolfe testified that Williams tried to make a bargain with him that if he would be allowed to go that night, he would be able to get 500 grams of heroin.

On cross-examination, Trooper Wolfe admitted he did not ask Williams if he was using drugs at the time of the interview and that he did not do all the twelve-step process he had been trained to use in determining whether an individual was intoxicated.  On redirect, Trooper Wolfe explained he did not feel it was necessary to go through the twelve-step process because there was no question in his mind that

Williams was not under the influence of drugs.  On cross examination, Trooper Wolfe testified that he did not see officers jump Williams and knock him to the ground.

Trooper Wolfe testified that there was no written waiver of Miranda warnings.  The police report filed seven days later is the only written report of the interview.  He testified that some indicators of heroin use are sleepiness, inability to pay attention, constricted pupils and itchy skin.

Special Agent Christopher Nawrocki testified that he was one of the officers who performed the arrest of Williams.  He stated there was no struggle and that Williams was not tossed to the ground but was placed on the ground and handcuffed.  Williams then walked to the vehicle which transported him to the police station.

Agent Nawrocki testified that two small capsules filled with a small amount of a substance were found in Williams' car, but does not remember if there were empty capsules in the car.

## B.  Defendant's Evidence

Dwain Williams took the stand and testified.  He had driven from Baltimore to Pennsylvania, somewhere near Shrewsbury.  Once he crossed the Maryland state line, he sniffed three capsules of heroin – about three grams.  He then drove to the meeting place to do the drug transaction.  Williams initially testified that it was a twelve minute drive but later said it took him two to five minutes to get to the meeting place.

Williams was out of his car with his back turned when the police arrived. He says he was thrown to the ground and knocked unconscious.  He claims for the rest of the evening he was in and out of consciousness, dizzy and had an injured

shoulder which hurts to this day. After being knocked to the ground, he did not regain consciousness until he awoke in the van that took him to the police station. He did not remember Wolfe or talking to him. He did not remember Miranda warnings; he was not always conscious and that he remembers waking up in York County Prison the next morning where he received medication for withdrawal symptoms. Williams admitted to a long criminal history and was not without knowledge of his Miranda rights.

**III.        Discussion**

To determine whether a confession is voluntary, courts are called upon to examine "the effect that the totality of the circumstances had upon the will of the defendant." *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986), citing *Schleckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). Factors to consider are:

> The youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.

*Id., citing Schleckloth v. Bustamonte*, 412 U.S. at 226.

Williams is 47 years of age. The extent of his education is unknown. He was advised of his rights and the questioning began within an hour of his arrest. There is no testimony that the interview was prolonged. Williams is street-wise and has a long criminal history. He claimed he had a concussion and hurt his shoulder when arrested.

The medical examination he was given the next day and the report of that exam (*see* Def. Ex. 1) shows that he had no open wounds; he reported head-trauma

4

and concussion in October 2008; had no joint pain; did have back pain; and no history of learning disability or receipt of special education.  The clinical observations were recorded as follows:

> **INITIAL CLINICAL OBSERVATIONS**
> VITAL SIGNS: bp: 110/80 Temp: 98.7F Pulse 76 Resp: 18
>   Height: 6 ft 2 in Weight 185W lbs
>
> Level of Consciousness: Alert
> Oriented x 3 (place/person/time): **Yes**   If no, describe:
> Behavior: Cooperative
> Affect/Mood: Normal
> Communication: Normal If abnormal, describe:
> Any evidence of acute trauma?  If so, describe:
>
> **Describe any abnormalities noted of the following systems:**
> Head and neck:
> Chest/back:
> Abdomen/genitalia:
> Arms/Hands:
> Legs/Feet:
> Neuro System:

The medical report raises questions as to the veracity of Williams' account of the arrest.  He does not report any head injuries that would cause a concussion on December 9, 2008 to December 10, 2008.  He reported no injury to his shoulder. The court notes that Williams is six feet, two inches tall and weighs 185 pounds.  He is a big man.  While the court saw only one of the arresting officers, it would have taken quite a few men to carry him to the van if he was passed out.  This court does not find credible Williams' testimony that he was thrown to the ground, suffered a concussion, and was in and out of consciousness.

The court next considers whether Williams was under the influence of heroin.  His testimony raises concerns about the credibility of being on heroin the night of December 9, 2008.  Williams testified that the next day he received a medical evaluation at the York County Prison and received treatment for withdrawal

symptoms.  No medications are listed on the medical report.  The final assessment in

medial report of December 10, 2008 is recorded as follows:

> **Assessment:**
>
> _____
>
> **Referral to:** Mental Health: **Yes** Dr. Call: **Yes** Other: DENTAL REFERRAL
> **Housing:** Gen Population: **Yes** Medical Housing: No Other: N
>   Low Bunk: **Yes** Low bunk/rec restr: No Duration: TILL CLEARED
> **Medications:** Status: None Other: N
> **Physical Aides:** Requirements: None  List: N
> **Special Checks Ordered:** BP checks: **Yes** Prenatal: No Other: N
> Accuchecks: No Neurochecks: No Other: N
> W/D checks: **Yes**
> **Treatment ordered (specify): N**
> PPD Planted: **Yes** CSR ordered: No Added to screens list for physical: **Yes**
> **Study Ordered:** EKG: No   Xray (specify): No   Other/Type: N
> **Other disposition/referral**: N
>
> I have answered all questions truthfully.  I have received written instructions
> and was shown how to obtain medical services at York County Prison.  I
> hereby give my consent for medical services to be rendered by the YCP
> medical staff under the direction of Prison Health Services Correctional Care.

Based on the foregoing, this court does not believe that Williams was

credible that he sniffed heroin on the night in question and that he received

medication for withdrawal symptoms.  Even disregarding the medical evaluation,

courts have rejected claims that voluntary illegal drug use coupled with Miranda

warnings, renders a confession involuntary.  (Gov't Brief in Opp. at pp. 5-6 (doc.

30).)

Under the totality of the circumstances discussed above, this court finds

Defendant's confession voluntary and was given after receiving Miranda warnings.

**IV.**       **Order**

   **IT IS THEREFORE ORDERED THAT** Defendant's motion to
suppress is **DENIED**.

           s/Sylvia H. Rambo
           United States District Judge

Dated:  March 11, 2009.